DUNLAP et al. v. GREEN.

(Circuit Court of Appeals, Fifth Circuit. January 30, 1894.)

No. 118.

1. DEEDS—VALIDITY—MADE TO PARTNERSHIP IN FIRM NAME.
   A deed made to a partnership in the firm name, without naming as grantees the individual partners, is good in equity, and, by implication, vests in the members of the firm the power to convey; and hence such deed is admissible, as a muniment of title, in favor of one who claims title to the land in question through the grantee of such partnership.

2. VENDOR AND VENDEE—VENDOR'S LIEN—DEFAULT.

Where a vendor's lien is reserved for the purchase money of land, and the vendee fails to pay the last installment of such purchase money, and abandons the contract, the vendor may rescind it without notice to the vendee, and pass a valid title to the land to another purchaser, free of any equities in favor of the former vendee. Kennedy v. Embry, 10 S. W. 88, 72 Tex. 390, followed.

3. SAME—BONA FIDE PURCHASERS—VALUABLE CONSIDERATION.

Plaintiff sued to recover land for which the consideration given by him was the surrender of a note given by his grantors, and evidencing a valid indebtedness from them to him; and it appeared that the note was surrendered at a time so long before the eviction complained of that the debt was barred by the statute of limitations. Plaintiff purchased without notice of any adverse claim to the land. *Held*, that he was a purchaser for valuable consideration, and as such entitled to protection on account of his want of notice.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

This is an action of trespass to try title, filed on the law side of the circuit court, by Marquis Green, Henry Darcy, and Caroline Garthwaite against William L. Dunlap, James Tullis, and Daniel Higgins for the title and possession of 1,000 acres of land in Ft. Bend county, Tex., part of the Robert Peebles league, known as the "Dunlap Place." Tullis and Higgins disclaimed, except as tenants of Dunlap, and Dunlap pleaded not guilty. Afterwards, the coplaintiffs of Green were dismissed, and Green filed an amended original petition, prosecuting the suit alone. The heirs of William Dunlap, deceased, except William L. Dunlap, who was already a party defendant, intervened in the suit, and, together with William L. Dunlap, asserted title to the lands as heirs of William Dunlap, and prayed that their title and possession be confirmed. By appropriate pleadings the plaintiff sought to recover the land from all of said heirs, and the issue was whether the superior legal title was in the plaintiff or in the heirs of William Dunlap. Some of the heirs are minors, and a guardian ad litem was duly appointed. A jury was duly waived, and the case was tried before the court. During the trial, all the evidence was incorporated in a bill of exceptions,—the only one taken in the case,—which bill closes as follows: "And, the foregoing being all the evidence adduced in said cause, the defendants duly objected to the introduction of the deed from Robert Peebles to Darcy & Wheeler, as above stated, because said deed was to a firm, and did not give the full name of either partner, and was not to a person or corporate entity, and therefore did not pass the legal title, but only an equitable title, which could not be set up in this common-law suit of trespass to try title; and said objections were overruled, and said deed admitted and considered by the court, and defendants duly excepted to said ruling; and, upon the said evidence for the plaintiff and the defendants, the court held that plaintiff had shown a superior legal title to the land in controversy, and accordingly gave judgment for the plaintiff therefor, and for $625.00 damages for use and occupation; and to said ruling and to said judgment defendants duly excepted, and in open court gave notice of a writ of error to the honorable circuit court of appeals of the fifth circuit, and tender this, their bill of exception, which is allowed and signed in open court at Galveston, this October 26, 1892."

The court found the following conclusions of fact and law: "The court finds from the testimony, as set out in the defendants' bill of exceptions, the following as conclusions of fact: First. That the balance of the purchase money, amounting to $3,500, mentioned in the deed from Robert Peebles to Wm. Dunlap, of date October 12, 1858, was never paid; that about the year 1868 the administrator of the estate of the said Wm. Dunlap, deceased, abandoned all claim to the land in controversy, and never paid taxes or asserted ownership of the same thereafter, he having been previously informed of the existence of a lien on the land in favor of the said Peebles. Second. That in January, 1870, by the deed recorded April 1, 1870,

the said Robert Peebles reconveyed the tract of land in controversy to the firm of Darcy & Wheeler, said firm at that time being composed of Henry G. Darcy, Wm. G. Wheeler, and J. C. Garthwaite, the consideration of this conveyance being the settlement of a debt due said firm of Darcy & Wheeler from the said Robert Peebles; that in October, 1878, by the deed recorded October 19, 1878, the said firm of Darcy & Wheeler conveyed the tract of land in controversy to Pierpont Phillips, under whom plaintiff claims as residuary legatee; that the consideration of the deed to said Pierpont Phillips was the delivery up and cancellation of a note for the sum of $8,000, executed by the said firm of Darcy & Wheeler in favor of said Pierpont Phillips, evidencing a valid indebtedness for like amount due the latter from said firm. Third. That at the time of the execution of said deeds, to wit, the deed from said Peebles to the said Darcy & Wheeler, and also the deed from the said Darcy & Wheeler to the said Pierpont Phillips, neither the said Pierpont Phillips nor any member of the firm of Darcy & Wheeler had any knowledge, actual or constructive, of the existence or execution of the instrument of date October 12, 1858, from the said Peebles to the said Dunlap, and the said Phillips never had any knowledge, actual or constructive, of any previous sale of the land in controversy, or contract of sale with reference to same, from the said Peebles in favor of the said Wm. Dunlap. Fourth. That, from the year 1870 down to the year 1886, Wm. E. Kendall, as agent for Darcy & Wheeler, and afterwards as agent of the said Pierpont Phillips and Marquis Green, plaintiff, paid taxes on the land in controversy, or on portions of the same, and that in 1881 he put a tenant in possession of the land, as agent as aforesaid, who remained on same until ordered off the land by the defendant Wm. Dunlap in January, 1887. Said tenant, for said period from January, 1881, to January, 1887, recognized the said Wm. E. Kendall as landlord and agent of the owners represented by him. Fifth. That in January, 1887, said tenant placed on the land by the said Kendall as aforesaid was ordered off it by the defendant W. L. Dunlap, who from that time until January, 1892, remained in possession of the land through tenants placed on same by him, and appropriated its fruits and revenues, during said period from January, 1887, to January, 1892, to his own use and benefit, the same being of the reasonable value of $125 per annum." "Conclusions of law: From the facts above referred to, the court deduces the following conclusions of law: First. That the instrument of date October 12, 1858, from Robert Peebles to Wm. Dunlap, vested in Dunlap merely an inchoate right to the land, which right could only be vested and perfected by payment in full of the purchase money; that, at the time of the execution of that deed from Peebles to Darcy & Wheeler, the superior title was in Peebles, and the title to the land in controversy passed by said deed to Darcy & Wheeler, and from them the plaintiff has shown a regular chain of title to himself. Second. That the settlement of an antecedent debt is not a valuable consideration, sufficient to protect an innocent purchaser in good faith, under the registration laws of Texas, from the effects of a prior unrecorded instrument. Hence the fact that said instrument of date October 12, 1858, from Peebles to Dunlap, was never recorded, and the fact, also, that the said grantees under the instrument of date January, 1870, from Robert Peebles to Darcy & Wheeler, purchased the land in controversy in good faith, without actual or constructive knowledge of said prior contract or sale, is immaterial, and could avail the plaintiff nothing. Third. That the evidence is insufficient to sustain in plaintiff a title by limitation,"—and thereupon rendered judgment for the plaintiff, Marquis Green, and the defendants sued out this writ of error, assigning errors as follows:

"First. The court erred in admitting in evidence, to show a legal title in plaintiff to the land in controversy, the following deed from Robert Peebles, the original grantee of the land, from the government of Coahuila and Texas, and common source of title, to Darcy & Wheeler, viz.:

" 'The State of Texas, De Witt County.

" 'Know all men by these presents, that I, Robert Peebles, of the state and county aforesaid, for and in consideration of one thousand dollars to me

in hand paid, the receipt of which is hereby acknowledged, have bargained and sold, and by these presents bargain, sell, convey, and deliver, to Darcy & Wheeler, of the city of New Orleans, state of Louisiana, a certain tract or parcel of land containing one thousand acres, situated as follows. [Here follows a description of the land.] To have and to hold unto the said Darcy & Wheeler and their heirs and assigns forever, relinquishing to them all right, title, or interest I may have in and to the same. Given under my hand this 31st day of January, A. D. 1870.

[Signed]                       " 'Robert Peebles.'

"Said deed was objected to as evidence by the defendants and interveners because same was to a firm, and did not give the full name of either partner, and was not to a person or corporate entity, and did not pass the legal title, but only an equitable title, which could not be set up in this suit at law, of trespass to try title, and the court erred in overruling said objections, and admitting said deed as evidence of legal title in plaintiff, and in holding that the same passed the legal title from the grantor.

"Second. The court erred in holding that, at the time of the execution of said deed to Darcy & Wheeler, the superior title to the land in controversy was in Peebles, and that by said deed the title passed to Darcy & Wheeler, because the evidence clearly showed that Peebles had, long before his deed to Darcy & Wheeler, divested himself of all legal and equitable title to the land, having sold the same to Wm. Dunlap, the ancestor of defendants and interveners, and that he received all the purchase money therefor from said Dunlap, except the last payment, evidenced by a promissory note, and which note he had transferred to Wm. Ryan, a third party, so that thereby Peebles, at the time of his execution of his deed to Darcy & Wheeler, had no title to said land to convey; and the evidence further clearly shows that plaintiff and those under whom he claims were not bona fide purchasers from said Peebles, but had full notice, through their title papers read in evidence, of said prior conveyance to Dunlap, and also had such notice from Dunlap's possession, and from statements made by Peebles, and also through their agent, W. E. Kendall; and, further, that the plaintiff, and those under whom he claims, had not paid a valuable consideration for said land, and, under the uncontradicted facts, judgment should have been rendered against the plaintiff.

"Third. The court erred in holding that the balance of the purchase money, amounting to $3,500, mentioned in the deed from Robert Peebles to Wm. Dunlap, of date October 13, 1858, was never paid. The evidence clearly shows that the first and second payments were made, and that Peebles had duly transferred the last payment to Wm. Ryan, so that he had been fully paid, as between him and Dunlap, for the land, and had no title or interest whatever to convey to Darcy & Wheeler at the date of their deed.

"Fourth. The court erred in holding that neither plaintiff nor those under whom he holds had any knowledge, actual or constructive, of the existence of the said instrument from Peebles to Dunlap, dated October 12, 1858. The evidence clearly showed notice to plaintiff and his grantors by the title papers in evidence, and by statements from Peebles, and the facts and circumstances in evidence were such as to put plaintiff's grantors on inquiry as to Peebles' conveyance to Dunlap."

S. W. Jones, for plaintiffs in error.

Henry F. Ring and Pressley K. Ewing, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge, (after stating the facts as above.) The plaintiffs in error have brought to this court for review the whole case,—pleadings, evidence, rulings, and findings,—as if the case were on appeal instead of writ of error; but, as the action in the court below is one at law, and was tried by the court under the

statute permitting a waiver of the jury, we can only inquire wheth-. er the facts found in the special findings, considered in connection with the pleadings, are sufficient to sustain the judgment, and whether any error was committed upon the rulings on matters of law properly preserved by the bills of exception. Rev. St. § 700. The bill of exceptions recites all the evidence adduced in the case, but does not show any request to find any specific fact, nor any objection to any or all the facts as found by the court, save an exception to a ruling, upon all the evidence in the case, that the plaintiff has shown a superior title to the land in controversy, and, accordingly, gave judgment for the plaintiff therefor, and for $625 damage for use and occupation; and the only ruling on matter of law shown to have been duly excepted to is the ruling admitting the deed from Peebles to Darcy & Wheeler in evidence.

1. The bill of exceptions shows that the land in controversy was granted to Robert Peebles by the government of Coahuila and Texas; that Peebles executed a conveyance, January 31, 1870, to Darcy & Wheeler, of the city of New Orleans, state of Louisiana; that thereafter, on October 10, 1878, J. C. Garthwaite and H. C. Darcy, of the city of Newark, N. J., and W. D. Wheeler, of the city of New Orleans, La., composing the firm of Darcy & Wheeler, conveyed said land to Pierpont Phillips, of East Woodstock, Conn.; and that Pierpont Phillips, who died in 1882, bequeathed the land to Marquis Green, plaintiff in the court below, defendant in error here. The heirs of William Dunlap, in their pleadings and by evidence, asserted title under an unrecorded conveyance from Robert Peebles to William Dunlap, October 12, 1858, which conveyance expressly retained a lien or mortgage for the unpaid purchase money. The objection to the admission of the deed to Darcy & Wheeler was because it was to a firm, and did not give the full name of either of the parties, and was not to a person or corporate entity, and therefore did not pass legal title, but only an equitable title, which could not be set up in this common-law suit of trespass to try title. "While a conveyance to a partnership in the partnership name is insufficient to convey the legal title, a partnership not being a legal person, either natural or artificial, it is valid as a contract to convey, and vests such an equitable title in the partnership as will defeat an after-acquired title; and where the firm name consists of the name of one partner, with the addition of '& Co.,' or some other partnership designation, the title is vested in the partner whose name is used, clothed with a trust for the benefit of the partnership." 17 Am. & Eng. Enc. Law, 559, 560, and cases there cited. "It is also necessary that the parties, grantor and grantee, should be sufficiently described in the deed. A deed is void which does not in some way point out the grantor and grantee. The usual method of describing a person is by giving his name in full; but this is not the only method. Any other description would suffice which would distinguish him from others; as, for example, where one is described by his office or by his relation to other persons." 5 Am. & Eng. Enc. Law, 432, and cases there cited. In the present case the deed was to two individuals who composed a firm by

their proper surnames, describing them as residents of the city of New Orleans, state of Louisiana. The grantees were as effectually and certainly designated as in many other cases in which, on good authority, the grantee has been held to be sufficiently named. See Hogan v. Page, 2 Wall. 607; Shaw v. Lowd, 12 Mass. 447; Den v. Hay, 21 N. J. Law, 174; Morse v. Carpenter, 19 Vt. 613. The office of a name at common law is merely to identify, and for that purpose the description in the deed objected to seems to be sufficient. If evidence should develop that there was more than one Darcy, or more than one Wheeler, in the city of New Orleans, state of Louisiana, or more than one firm of Darcy & Wheeler in said city, it would be merely a case of latent ambiguity, arising from extraneous evidence capable of being removed, and in every such case of doubt the true party may be shown by parol. Games v. Dunn, 14 Pet. 322. The general rule is that, where a deed to a firm or a partnership is not sufficiently definite in a description of the persons grantees, it is not void, but good in equity as conveying a full equitable title. "It may be conceded that, at law, a deed made to or by a partnership in the firm name, the full name of neither partner being given, would not pass title to the land, but such is not the rule in equity." Frost v. Wolf, 77 Tex. 455–460, 14 S. W. 440, citing numerous authorities. And it would seem clear enough on principle that a deed to a firm, being good in equity, vests in the members of the firm, by implication, the power to convey; and, in this view of the case, the deed of Peebles to Darcy & Wheeler, treated as a power of attorney only, under which a deed conveying the full equitable and legal title to Phillips was made, was admissible in evidence as a muniment of title.

2. The first conclusion of fact found by the court is as follows:

"The balance of the purchase money, amounting to $3,500, mentioned in the deed from Robert Peebles to William Dunlap, dated October 12, 1858, was never paid, but about the year 1868 the administrator of the estate of the said William Dunlap, deceased, abandoned all claim to the land in controversy, and never paid taxes or asserted ownership of the land thereafter, he having been previously informed of the existence of a lien on the land in favor of said Peebles."

The fifth finding of fact was to the effect that in January, 1887, the tenant placed on the land by the agent of Pierpont Phillips and Marquis Green was ordered off by the defendant W. L. Dunlap, who, from that time until January, 1892, remained in possession of the land, through tenants placed on the same by him, and appropriated its fruits and revenues during said period from January, 1887, to January, 1892, to his own use and benefit, the same being of the reasonable value of $125 per annum. The other findings of fact show a regular chain of title from Robert Peebles, who conveyed to Darcy & Wheeler in 1870, down to Marquis Green, the plaintiff in the court below. The question raised on these findings as being sufficient to warrant a judgment in favor of Marquis Green, plaintiff, for the land in controversy, and for the sum of $625, the fruits and revenues, is whether, under the facts, the superior title to the land in controversy is in the heirs of Dunlap

or in Marquis Green; and the answer to that question depends upon whether, under the peculiar conveyance made by Robert Peebles to William Dunlap, Robert Peebles had the right to rescind the said contract without notice, on the ground of nonpayment of the vendor's lien expressly reserved, and of abandonment. The rule in regard to such cases is declared in the case of Kennedy v. Embry, 72 Tex. 390, 10 S. W. 88, as follows:

"Under such contract, upon total failure of performance on the part of the vendee, the vendor has the right to either sue for the purchase money and foreclose his mortgage, or he may rescind the contract and recover the land. Where there had been part performance by the vendee, as paying a portion of the purchase money, or taking possession and making improvements under the contract, he would be entitled to reasonable notice of the vendor's intention to rescind. * * * If the vendee has actually abandoned the contract, or has so acted as to create a reasonable belief, on the part of the vendor, that he has abandoned it, the vendor may rescind without notice of his intention, notwithstanding the part performance by the vendee. Where there has been no attempt to perform any part of the contract, and the time for performance has expired, no equities exist in favor of the vendee, and the vendor may rescind without notice to the vendee of his intention to do so, and convey the land to another without foreclosing his lien for the purchase money,"—citing Dunlap v. Wright, 11 Tex. 597; Webster v. Mann, 52 Tex. 416; Jackson v. Palmer, Id. 427; Ufford v. Wells, Id. 619; Thompson v. Westbrook, 56 Tex. 265.

The cases cited show that they fully sustain the text, and there are many others of like effect which could be cited, all showing the rule in Texas to be that, where a vendor retains in the deed a mortgage or an express lien for the payment of the purchase money, the superior title remains in the vendor until the purchase money is fully paid. As in the instant case, the conveyance from Peebles to Dunlap retains an express lien for the payment of the purchase money, and, as the court has found as a fact that the Dunlap claim under said conveyance has long since been abandoned, we agree with the trial judge in holding that the title in the defendant in error is the outstanding superior title. The judgment of the circuit court, as based upon the facts in the case, can be sustained on the further ground that the deed to Pierpont Phillips, defendant's ancestor, was a full conveyance of the property, as the findings of fact show that Phillips purchased without any notice whatever of the claim of Dunlap, and paid a full and fair price. The only objection that is urged against Phillips as a purchaser for value without notice is that the consideration paid by him, though it was a full and fair price for the land, was the extinguishment of an antecedent indebtedness, and, for this reason, insufficient to give him the protection of the registration laws. It is true, ordinarily, that, where the consideration is a pre-existing debt, the purchaser is not protected against an unrecorded deed. The reason generally given is that the purchaser, in such case, parts with no new consideration, and is in no worse condition by his purchase than he was before. Spurlock v. Sullivan, 36 Tex. 517; McKamey v. Thorp, 61 Tex. 648; Overstreet v. Manning, 67 Tex. 657, 4 S. W. 248. In the present case, the court found that the consideration of the deed to Phillips was the delivery up and cancellation of a note

for the sum of $8,000, executed by the firm of Darcy & Wheeler in favor of Pierpont Phillips, evidencing a valid indebtedness for a like amount due the latter from said firm; and the record shows that this was done such a length of time before the date of eviction that the debt was long previously barred by the statutes of limitation; so that it appears that Phillips, if denied the benefit of the plain language of the statute, will lose his debt and the surrendered security entirely. The case of Alstin v. Cundiff, 52 Tex. 465, was a case where the holder of an unrecorded instrument sought, after long lapse of time, to prevail over a purchaser for the consideration of an antecedent indebtedness. The court says:

"As between the immediate parties, the payment of a pre-existing debt due from one to the other should be as valuable a consideration to support a contract as though the amount was then for the first time advanced,"

—Thus recognizing that such a purchaser comes within the protecting language of the statute.

The court further says:

"There was no offer to refund this indebtedness, and no evidence that, in respect to their collection, the creditors, from want of the bar of limitations, insolvency of the debtors, or other good cause, particularly after so long a lapse of time, could be placed in as good condition as before the execution of the deeds. * * * Under these circumstances, it would seem but reasonable and equitable that, before she (the one relying upon the unrecorded instrument) should prevail, it should be shown that if the deed were set aside because the consideration was a pre-existing debt, that Alstin (the creditor) would not be prejudiced in the collection, otherwise, of this indebtedness."

In our opinion, the case of Alstin v. Cundiff was well ruled, and we know of no subsequent Texas case questioning or overruling it. Considering Alstin v. Cundiff, and the maxim, "cessante ratione legis cessat ipsa lex," we are of the opinion that, in the case in hand, on the facts as found by the trial judge, Pierpont Phillips should be considered and treated as an innocent purchaser for value, and that, as against him and his heirs and assigns, the unrecorded instrument of Peebles to Dunlap should be held wholly void. The judgment of the circuit court is affirmed, with costs.