### JAMES BILLINGS ET AL. v. B. H. WARREN ET AL.

Decided March 25, 1899.

**1. Deed—Trust—Extrinsic Evidence.**

The grantee takes full title and becomes personally charged with the duty of supporting and educating the grantor's son, under a deed which, in the premises, describes the grantee as "trustee," and in the habendum clause states that he is to have and hold the property "in trust," but is in other respects in the usual form of a general warranty deed, reciting that it is made for "a good and valuable consideration," where it appears extrinsically that it was the intention of the grantor to confer a complete title and to have the grantee maintain and educate his son, and that the words importing a trust were inserted at the request of the grantee, to "make it more explanatory."

**2. Same—Deed Not Testamentary, When.**

A deed is not testamentary in character so as to require its probate in order to make it effective, where it was delivered during the grantor's lifetime and took effect before his death, although executed in immediate anticipation of death.

APPEAL from Dallas. Tried below before Hon. W. J. J. SMITH.

*Thomas & Turney,* for appellants.

*Sam A. Leake,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellants sued appellees in trespass to try title for half the land described, setting out title by inheritance from the grandchild, Tommy Billings; also for half of his personal estate. Defendant, Mrs. Warren, is maternal grandmother of Tommy. Defendant answered by general denial, and B. H. Warren sets up title by deed from David Billings, father of Tommy, setting out the deed and averring that it was made in David's last sickness, and in consideration that B. H. Warren would, in the event of David's death, maintain and educate Tommy, which David requested B. H. Warren to do, in the

event of his death.    That the deed was on its face made to him "as trustee," and stated that he was to hold the land in suit "in trust," both expressions inserted at the instance of B. H. Warren to make the deed "more explanatory."    Warren averred he had properly cared for Tommy till he died; that by the deed, the care of Tommy, and his death, he was entitled to absolute title to the land; that he also had the title to the personalty by bill of sale from David.    Plaintiffs excepted to the answer. Exceptions overruled and exceptions to that order reserved.    Trial by the court, and judgment for the defendants on the ground that the deed from David Billings to Warren conveyed title to the land, and the bill of sale title to the personalty.    Exceptions to the conclusions of law and of fact, and to the judgment and appeal by plaintiffs.

The trial court filed the following conclusions of fact, which are not contested in this court, and we adopt the same:

"1.    David Billings was the owner in fee simple of the land described in plaintiffs' petition.

"2.    David Billings died intestate on the 26th day of December, 1895.

"3.    David Billings left surviving him one child, named Tommy Billings, at about the age of 13 years when said David Billings died, which child died January 19, 1897.

"4.    Plaintiffs were the father and mother of the said David Billings.

"5.    The defendant, Mrs. B. H. Warren, was the mother of David Billings' wife, said wife having died in 1887.

"6.    Defendant B. H. Warren was the husband of his codefendant, Mrs. B. H. Warren, and the stepfather of said David Billings' wife. That Tommy Billings was the son of defendant Mrs. B. H. Warren's daughter.

"7.    Defendant D. E. Woods was the occupant of property at the time of the death of said David Billings and continuously so up to the date of this trial.    He first claimed under said David Billings, and since his death under the said B. H. Warren.

"8.    The court further finds that on the 25th day of December, 1895, the day prior to the death of said David Billings, he transferred to defendant, B. H. Warren, by bill of sale, all the personal property he had at his farm in Dallas County, Texas.    That the consideration for said sale was the extinguishment of certain debts then owing to the said Warren by the said David Billings.

"9.    The court further finds that on the 25th day of December, 1895, said David Billings, made, executed, and delivered to said B. H. Warren a deed to the land described in plaintiffs' original petition.    That the consideration for said deed was that the said B. H. Warren would educate, maintain, and support the said Tommy Billings until he was able to take care of himself.    That the said Warren accepted said deed un-under said conditions, and did educate, maintain, and support the said Tommy Billings in a proper manner until the day of his death."

Appellants group their first, third, and fifth assignments of error, and

present thereunder several propositions, in which they insist that there was error in the judgment of the trial court and the same should be reversed.

The first contention is, that the deed upon its face shows a trust, and .the trustee can not claim adversely to the trust, but the trust will inure to the benefit of the grantor or his heirs.

The deed from David Billings and B. H. Warren was executed under these circumstances: David Billings and his son Tommy had gone to Pueblo, Colorado, to visit the family of appellee Warren. Mrs Warren was the mother of David Billings' deceased wife, and the grandmother of his son Tommy. They arrived there on December 24, 1895, and David Billings was at the time sick with pneumonia. The Warrens furnished him a competent physician and carefully nursed him. Billings at that time was indebted to the appellee. On the 25th of December, 1895, Billings was told by the physician that he could not live many hours, and if he had any affairs to fix up he had better fix them right away. Billings then stated to the physician that "I am owing some money, and after my funeral expenses are paid and my other debts, I wish to leave the rest to the boy, for him to be educated with and maintained until he can provide for himself." He then requested the doctor to call the appellee into the room. The appellee entered the room, and Billings called him to the side of the bed and told him he wanted to make some disposition of his property and have his boy Tommy raised and taken care of by said appellee. He stated that he had given the matter considerable thought, and wanted to know the best way to leave his property and at the same time pay what he owed and settle the debt due appellee. The conversation resulted in David Billings executing a bill of sale to appellee for the personal property, and a deed to the land in dispute. The deed was signed, acknowledged, and delivered on December 25th.

At the time these instruments were executed the evidence shows that the said David Billings was rational and his mind clear, and he fully understood what he was doing.

David Billings lived in Dallas County, Texas, and was in bad health before going to Colorado. Before starting, he stated to one witness that he intended to go to Pueblo and take his son Tommy there for the purpose of letting his grandmother and B. H. Warren raise him; that he was not situated so that he could give the child proper attention and education. At the time the deed was executed, Billings proposed to make an absolute deed to the property in dispute to Warren, and the words "as trustee" and "in trust" were inserted at Warren's request. The trial court held that the bill of sale to the personal property was valid and conveyed a good and perfect title to the property therein set out, to the appellee Warren. We think this holding correct.

The deed recites that it is made "this, the 24th day of December, in the year of our Lord one thousand eight hundred and ninety-five, between David Billings, of the county of Dallas and State of Texas, of the

first part, and B. H. Warren, as trustee, of the county of Pueblo and State of Colorado, of the second part."

It recites that it is executed in consideration of "one dollar and other good and valuable consideration," and the receipt of which is acknowledged.

The habendum clause reads: "To have and to hold in trust," etc. In other respects the deed is in the usual form of a general warranty deed. It evidenced an executed contract. The effect of this deed was to place the title of the property in the grantee, Warren.

The facts proven show that it was the intention of the grantor to confer upon B. H. Warren a complete title to the land. He took the full title. He became personally charged with the duty of supporting, maintaining, and educating the boy Tommy. Gibson v. Fifer, 21 Texas, 261.; Webster v. Mann, 52 Texas, 426; Rainey v. Chambers, 56 Texas, 17; Catlett v. Starr, 70 Texas, 487; Downer v. Church, 44 N. Y., 647; Perry on Trusts, secs. 152, 153; 1 Lewin on Trusts, 8 ed., p. 137.

The evidence shows that the grantee faithfully discharged his obligation towards the boy Tommy.

The contention that the deed was of a testamentary character and not effective until probated, is without merit. The deed was delivered during the lifetime of the grantor and took effect before his death. 2 Dev. on Deeds, sec. 983; Carpenter v. Hanning, 34 S. W. Rep., 774.

We do not think any of appellant's assignments of error are well taken, and we overrule the same.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*